**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED FIRE & CASUALTY COMPANY,** | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:07CV 00072 LMB |
| **JERRY LIPPS d/b/a CUSTOM EXPRESS, INC., et al.,** | ) ) ) ) | |
| Defendants. | ) | |

## AMENDED MEMORANDUM AND ORDER

This matter is before the court on the Complaint for Declaratory Judgment of Plaintiff United Fire & Casualty Company ("United Fire"). Plaintiff seeks a declaration of its rights and obligations under an insurance policy issued in favor of Jerry Lipps d/b/a Custom Express.[1] Plaintiff asserts its cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties under 28 U.S.C. § 636 (c).

Presently pending before the court is plaintiff's Motion for Summary Judgment (Doc. No. 31). For the reasons stated herein, the motion for summary judgment will be granted.

---

[1] Jerry Lipps d/b/a Custom Express is no longer a party to this action.

-1-

## Factual Background[2]

The insurance coverage dispute that is the subject of this action arises out of an incident set forth in greater detail in Seabaugh v. Jannotti, Case No. 05CG-CC00105, filed in the Circuit Court of Cape Girardeau County, Missouri ("underlying lawsuit"). The parties have stipulated that all discovery and testimony from the underlying lawsuit may be used in this action without additional authentication or foundation.

Jerry Lipps was an individual and a business owner in Cape Girardeau, Missouri who owned, among other businesses and properties, Jerry Lipps, Inc., a Missouri Corporation; and Astro Manufacturing, Inc. d/b/a Custom Express, Inc., a Missouri Corporation. Mr. Lipps is now deceased, his date of death being September 10, 2007. The only entity that ever did business as "Custom Express, Inc." was Astro Manufacturing, Inc. Jerry Lipps obtained all insurance for his businesses through the same agency. There is no such entity as "Jerry Lipps d/b/a Custom Express," or "Custom Express." Jerry Lipps d/b/a Custom Express, Custom Express, and Jerry Lipps, Inc. were not parties to the underlying lawsuit.[3]

Defendants Judith R. Seabaugh, Van Seabaugh, Victor Seabaugh, and Vallerie Burke (the "Seabaugh defendants") are the survivors of Donald Ray Seabaugh. The Seabaugh defendants

---

[2]The court's recitation of the facts is taken from plaintiff's Statement of Uncontroverted Material Facts, defendants' Response to Plaintiff's Statement of Purportedly Uncontroverted Material Facts, Defendants' Statement of Additional Material Facts, and Plaintiff's Response to Defendants' Statement of Additional Material Facts.

[3]Plaintiff admits that testimony given by Jerry Worley in the underlying lawsuit supports the facts contained in this paragraph, although plaintiff states that it has no independent knowledge to admit or deny the information and thus denies the facts on this basis.

have alleged that on or about January 31, 2005, Alan S. Jannotti[4] was operating a "yard dog" semi-tractor on a parking lot owned or leased by Astro Manufacturing, Inc. d/b/a Custom Express, Inc.[5] The Seabaugh defendants alleged that Mr. Jannotti ran over Donald Ray Seabaugh, and that Donald Ray Seabaugh subsequently died as a result of injuries received in that accident. The Seabaugh defendants filed suit against Alan S. Jannotti and Astro Manufacturing d/b/a Custom Express, Inc. in the underlying wrongful death suit in connection with this incident. In addition to the claims against the driver, the Seabaugh defendants also made claims against Astro Manufacturing, Inc., asserting that the condition of the parking lot was unreasonably defective and dangerous and also asserted a negligent entrustment claim. Jerry Lipps d/b/a Custom Express, Inc., Custom Express, Jerry Lipps, Inc., and Alan S. Jannotti are seeking defense/indemnification for such claims under a Business Auto Policy, Policy #101-60047230, issued by plaintiff United Fire to Jerry Lipps d/b/a Custom Express.[6]

At the time of the accident, both Mr. Jannotti and decedent Donald Ray Seabaugh were employees of Jerry Lipps, Inc., and were acting in the course and scope of their employment.[7] As a result of the accident, Defendant Judith Seabaugh made a claim under a workers' compensation

---

[4]Alan S. Jannotti is no longer a party to this action.

[5]Astro Manufacturing, Inc. d/b/a Custom Express, Inc. is no longer a party to this action.

[6]Defendants deny this fact, stating that only Astro Manufacturing, Inc. d/b/a Custom Express, Inc. is seeking defense/indemnification and that they are the only entity to ever conduct business as "Custom Express." Defendants contend that Astro Manufacturing, Inc. d/b/a Custom Express, Inc. was the insured and it has the underlying judgment pending against it.

[7]Defendants contend that Mr. Jannotti was working in a dual agency/servitude and was also furthering the business interest for Astro Manufacturing, Inc. d/b/a Custom Express, Inc. at the time of the incident.

policy issued by ACE Property & Casualty Insurance Company to Jerry Lipps, Inc., and recovered thereunder for the death of decedent Donald Ray Seabaugh. After reaching the settlement under the workers' compensation policy issued by ACE Property & Casualty Insurance Company to Jerry Lipps, Inc., survivor Judith Seabaugh signed a Stipulation for Compromise Settlement that released and forever discharged the employer as well as the employee who ran over Mr. Seabaugh.[8]

The Seabaugh defendants entered into an agreement with Astro Manufacturing, Inc. d/b/a Custom Express, Inc. and Alan Jannotti pursuant to Section 537.065 RSMo, whereby the Seabaugh defendants agreed that if they obtained a judgment or settlement against Astro Manufacturing, Inc. d/b/a Custom Express, Inc. and Alan Jannotti in the underlying lawsuit, they would only collect on the assets of the policy issued by United Fire or the assets of any other insurer that insures the legal liability of these defendants. Following a bench trial[9] in the underlying lawsuit, Judgment was issued in favor of the Seabaugh defendants and against Astro Manufacturing Inc. d/b/a Custom Express, Inc. and Alan Jannotti in the amount of $2,700,000.00.

The insurance policy at issue is a Business Auto Policy, Policy #101-60047230, issued by plaintiff United Fire to Jerry Lipps d/b/a Custom Express.[10] The policy had effective dates of

---

[8] Defendants deny that this release constitutes a release of any wrongful death claims.

[9] Plaintiff denies a bench trial was held because "the only meaningful involvement that defense counsel had was to ensure that the Seabaughs understood that any judgment rendered could only be collected from plaintiff United Fire." See Pl's Ex. D.

[10] Defendants deny that the policy was issued to Jerry Lipps d/b/a Custom Express, stating that the only entity that did business as "Custom Express, Inc." was Astro Manufacturing, Inc., a Missouri Corporation wholly owned by Jerry Lipps.

October 27, 2004, to October 27, 2005, and provided liability limits of $1,000,000. The policy contains a workers' compensation exclusion, which states that the insurance policy does not apply to "[a]ny obligation for which the 'insured' or the 'insured's' insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law." (Def's Ex. C., p. 3).

Plaintiff United Fire filed the instant action for a declaratory judgment that the policy issued by United Fire does not afford coverage for the incident at issue in the underlying lawsuit. Plaintiff contends that the policy does not provide coverage for the following reasons: the claims asserted by the Seabaugh defendants in the underlying lawsuit fall exclusively within the purview of the Missouri Workers' Compensation Act, and exclusive jurisdiction lies with Missouri's Labor and Industrial Relations Commission; Exclusion 3 of the policy unambiguously excludes coverage for the claims made by the Seabaugh defendants; Exclusion 4 of the policy unambiguously excludes coverage for the claims made by the Seabaugh defendants; and the claims asserted by the Seabaugh defendants in the underlying lawsuit are barred by the Stipulation for Compromise Settlement that was entered into between Judith Seabaugh and Jerry Lipps, Inc. for the wrongful death of Donald Ray Seabaugh.

## Discussion

### A.     Summary Judgment Standard

A court may grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56 (c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202

(1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252, 106 S. Ct. 2512. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the non-movant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue. See Anderson, 477 U.S. at 249, 106 S. Ct. 2510-2511. The non-movant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Id. at 327, 106 S.Ct. 2555 (quoting Fed. R. Civ. P. 1).

**B.** **Plaintiff's Motion For Summary Judgment**

Plaintiff first argues in its Motion for Summary Judgment that the claims asserted by the Seabaugh defendants in the underlying lawsuit fall exclusively within the purview of the Missouri's Workers' Compensation Act, RSMo § 287.010, et seq., and exclusive jurisdiction lies with Missouri's Labor and Industrial Relations Commission. Plaintiff also argues that the insurance policy at issue contains a "worker' compensation" exclusion, exclusion 3, which

excludes coverage for the $2,700,000 judgment out of which this action arises. Plaintiff finally argues that Judith Seabaugh has previously recovered for the death of Donald Ray Seabaugh under a workers' compensation policy issued by ACE Property & Casualty Insurance Company to Jerry Lipps, Inc., and signed settlement documents that disposed of any claims that the Seabaugh defendants might have had in connection with this incident, including the $2,700,000 judgment.

Insurance contract terms are given their plain meaning and enforced as written, while ambiguous terms are construed against the insurer. Rice v. Fire Ins. Exch., 946 S.W.2d 40, 42 (Mo. Ct. App. 1997). Determination of whether insurance contract language is ambiguous is a question of law. Id. A term is ambiguous if it is subject to "duplicity, indistinctness or uncertainty." Mo. Employers Mut. Ins. Co. v. Nichols, 149 S.W.3d 617, 625 (Mo. Ct. App. 2004).

**Workers' Compensation Exclusivity**

Plaintiff contends that the claims asserted by the Seabaugh defendants in the underlying lawsuit fall exclusively within the purview of the Missouri's Workers' Compensation Act, and that the circuit court that entered the judgment therefore lacked jurisdiction over the Seabaugh defendants' claims. Plaintiff further argues that the policy at issue contained a "workers' compensation" exclusion, which excludes coverage for the $2,700,000 judgment.

Defendants argue that Astro Manufacturing, Inc. d/b/a Custom Express, Inc. is a Third-Party, not an Employer, and is, therefore, liable. Defendants further argue that Mr. Jannotti is liable because they alleged "something more" as to Mr. Jannotti in the underlying lawsuit.

Missouri's Workers Compensation Act ("the Act") provides the exclusive rights and remedies for claims involving workplace injury sustained by a worker in the course and scope of

her employment. Wright v. St. Louis Produce Market, 43 S.W.3d 404, 414 (Mo. Ct. App. 2001). When a workers' compensation exclusivity defense is raised, a motion to dismiss should be granted where it "appears" that the trial court lacks subject matter jurisdiction because of workers' compensation exclusivity. Collier v. Moore, 21 S.W.3d 858, 860 (Mo. Ct. App. 2000); Wright, 43 S.W.3d at 414. Although the party raising the defense has the burden to prove lack of jurisdiction, the quantum of proof required is not high. Id. Where a question of jurisdiction is in doubt, it should be resolved in favor of the Labor and Industrial Relations Commission. Id.

As an initial matter, the court notes that the parties dispute the significance of the corporate status of the various entities involved in this case. The insured named on the policy at issue is "Jerry Lipps d/b/a Custom Express, Inc." Defendants contend that no such corporate entity exists and that the entity was not a party to the underlying lawsuit. Defendants argue that the proper insured is "Astro Manufacturing, Inc. d/b/a Custom Express, Inc." Plaintiff admits that testimony given by Jerry Worley[11] in the underlying lawsuit supports the fact that "Jerry Lipps d/b/a Custom Express, Inc." does not exist as a corporate entity. Plaintiff, however, argues that, if no such entity exists, then there is no judgment against plaintiff's insured and plaintiff is not liable to defendants.

The undisputed facts reveal that there is no such corporate entity as Jerry Lipps d/b/a Custom Express, Inc. Jerry Lipps, Inc. and Astro Manufacturing, Inc. d/b/a Custom Express, Inc. were both Missouri corporations owned by the individual Jerry Lipps. The facts also indicate that the only corporate entity that did business as Custom Express, Inc. was Astro Manufacturing, Inc.

---

[11]Jerry Worley was employed as the accountant/secretary of Jerry Lipps, Inc. for 22 years. (Deposition of Jerry Worley, Def's Ex. 5, p. 5).

Based on these undisputed facts, the undersigned finds that Astro Manufacturing, Inc. d/b/a Custom Express is the insured of the policy at issue in this case.

In another issue involving the corporate status of the entities in this case, plaintiff essentially requests that the court ignore the corporate status of Jerry Lipps, Inc. and Astro Manufacturing, Inc. d/b/a Custom Express, Inc. Plaintiff uses the names of these two entities interchangeably and assumes that, because Jerry Lipps owned both companies, Donald Ray Seabaugh was an employee of both companies. Defendants maintain that plaintiff was employed by Jerry Lipps, Inc. but Astro Manufacturing, Inc. d/b/a Custom Express, Inc. was a third party.

Ordinarily, two separate corporations are to be treated as wholly distinct legal entities even where one corporation owns part of or all of the other corporation. However, when one corporation exercises complete dominion and control over another and such control has been used to accomplish fraud or injustice or some unlawful purpose, the separate formal corporate structures will be disregarded and the corporate veil may be pierced. Collet v. American Nat'l Stores, Inc., 708 S.W.2d 273, 283-84 (Mo. Ct. App. 1986).

In this case, Jerry Lipps, Inc. and Astro Manufacturing, Inc. d/b/a Custom Express, Inc. are two separate Missouri corporations. Plaintiff does not argue that the court should pierce the corporate veil of these entities. As such, defendants properly note that these two entities are legally distinct. It does not necessarily follow, however, that plaintiff was employed only by Jerry Lipps, Inc. The court must next determine whether plaintiff was also an employee of Astro Manufacturing, Inc. d/b/a Custom Express, Inc.

### 1. **Employer**

It is undisputed that Mr. Jannotti and Mr. Seabaugh were employed by Jerry Lipps, Inc. Defendants contend that they were also "furthering-as agents-the business interests of third-party non-employer Astro Manufacturing, Inc. d/b/a Custom Express, Inc. by moving trailers." Plaintiff appears to argue that Astro Manufacturing, Inc. d/b/a Custom Express, Inc. ("Astro") was the employer of Mr. Jannotti and Mr. Seabaugh simply because Jerry Lipps, Inc. and Astro were the same entity. This position has already been discussed and rejected.

Where an employee is subject to the control of two employers, he is not a "special" or "borrowed" servant of either, but a joint employee of both. Stone v. Heisten, 777 S.W.2d 664, 667 (Mo. Ct. App. 1989) (overruled on other grounds by Hampton v. Big Boy Steel Erection, 121 S.W.3d 220 (Mo. banc 2003)); Hartford Accident & Indem. Co. v. Travelers Ins. Co., 525 S.W.2d 612, 615 (Mo. Ct. App. 1975). "Joint employment occurs when a single employee, under contract with two employers, and under simultaneous control of both, performs services for both employers and the services provided are the same or closely related to that of the other." Stone, 777 S.W.2d at 667. That one or more of the joint employers does not actually pay the employee for the employee's services will not prevent the employer from being held accountable as a joint employer of the employee; no such requirement is set out in Missouri workers' compensation law. Id. In the case of joint employment, each employer is jointly and severally liable for workers' compensation. Id.

In this case, the undisputed facts reveal that Astro was an employer of Mr. Seabaugh and Mr. Jannotti. In an effort to cut costs in 2002, Jerry Lipps consolidated the payroll services of all of his companies, including Astro. Mr. Lipps ran the payroll of all of his companies through Jerry

Lipps, Inc, an "umbrella company." (Deposition of Jerry Worley, Def's Ex. 5, p. 13). Mr. Seabaugh and Mr. Jannotti were hired by Jerry Lipps, Inc. to work for Astro at the drop lot operation at the Procter & Gamble plant north of Cape Girardeau, Missouri. Jerry Lipps, Inc. issued paychecks to Astro workers, including Mr. Seabaugh and Mr. Jannotti, and Astro then reimbursed Jerry Lipps, Inc. for the pay of these employees. (Id. at 12). Mr. Seabaugh and Mr. Jannotti worked for the same entity, and were performing business for the same employer on the date of the incident resulting in Mr. Seabaugh's death. (Id. at 36). The equipment the men operated, including the yard dog operated by Mr. Jannotti on the date of Mr. Seabaugh's death, was owned by Astro. (Id. at 15). On-site personnel at the Astro drop lot controlled the daily operation of the drop lot, including any employee discipline issues. (Id. at 23-24). The only contact Jerry Lipps, Inc. had with employees working at the Astro drop lot was for payroll and insurance purposes. (Id. at 24).

Based on these undisputed facts, it is clear that Astro exercised control over the work performed by Mr. Seabaugh and Mr. Jannotti. The parties agree that Jerry Lipps, Inc. was the employer of Mr. Seabaugh and Mr. Jannotti. As such, Jerry Lipps, Inc. and Astro were joint employers of Mr. Seabaugh and Mr. Jannotti. At the time of the accident, Mr. Seabaugh and Mr. Jannotti were acting in the course and scope of their employment with Astro. As such, the Seabaugh defendants' claims against Astro are barred by the worker's compensation exclusivity provisions.

Plaintiff argues that the circuit court in the underlying lawsuit that entered judgment against Astro therefore lacked jurisdiction over the Seabaugh defendants' claims. The court notes that a recent Missouri Supreme Court decision, J.C.W. ex rel. Webb v. Wyciskalla, 275 S.W.3d

-11-

249, 253 (Mo. banc 2009), calls into doubt previously established case law holding that trial courts lack subject matter jurisdiction because of workers' compensation exclusivity. In Webb, the Court stated that "subject matter jurisdiction of Missouri's courts is governed directly by the state's constitution. Article V, section 14 sets forth the subject matter jurisdiction of Missouri's circuit courts in plenary terms, providing that '[t]he circuit courts shall have original jurisdiction over all cases and matters, civil and criminal.'" Id. at 253. Applying that analysis to the case before it, the Court held: "The present case is a civil case. Therefore, the circuit court has subject matter jurisdiction and, thus, has the authority to hear this dispute." Id. at 254. In McCracken v. Wal-Mart Stores East, 2009 WL 464860, * 1 (Mo. Ct. App. May 5, 2009), the Missouri Court of Appeals applied Webb to workers' compensation exclusivity and held that the exclusive workers' compensation remedy provided by section 287.120 did not deprive the circuit court of subject matter jurisdiction to hear and decide the plaintiff's tort claim. The McCracken case was transferred to the Missouri Supreme Court on May 5, 2009.

Even if the circuit court in the underlying lawsuit had subject matter jurisdiction to enter the judgment that is the subject of this action, the terms of the policy provide an independent basis for finding that the judgment is not covered under the policy.

The United Fire policy contained the following exclusion:

> 3. Workers' Compensation
>
> Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

(Pl's Ex. C, p. 3). Courts have construed similar workers' compensation exclusions as applying to preclude tort claims rather than only claims for workers' compensation benefits See Johnson v.

Marciniak, 231 F. Supp.2d 958, 959-60 (D. N.D. 2002); Brown v. Indiana Insurance Company, 184 S.W.3d 528, 534 (Ky. 2005); Weger v. United Fire and Casualty Company,796 P.2d 72, 73-74 (Colo. Ct. App. 1990). The exclusion applies in the context of a tort action because the exclusion states it precludes any obligation for which the insured "*may* be held liable under any workers' compensation...law." (Pl's Ex. C, p. 3) (emphasis added). Under the terms of the policy, it is irrelevant whether the insurer was in fact held liable under workers' compensation law or whether the insurer even had workers' compensation coverage. See Johnson, 231 F. Supp.2d at 960-61 (exclusion applies even though employer did not have workers' compensation insurance); Brown, 184 S.W.3d at 534-35 (same); Weger, 796 P.2d at 73-74 (same).

As previously discussed, Astro, as a joint employer of Mr. Seabaugh, may be held jointly and severally liable for the workplace death of Mr. Seabaugh under workers' compensation law. Thus, the basis for the wrongful death action-the work-related death of Mr. Seabaugh-is an obligation for which Astro may be held liable under workers' compensation law. As such, the unambiguous terms of the policy exclude coverage for the Seabaugh defendants' claims.

**2.    "Something More"**

The Missouri Worker's Compensation Act also provides the exclusive remedy for the Seabaugh defendants' tort claims against Defendant Jannotti. Mr. Jannotti was employed by Jerry Lipps, Inc. and Astro. The immunity employers enjoy from common law liability and civil suits under the Act extends to any employee charged with carrying out the employer's duties. See State ex rel. Taylor v. Wallace, 73 S.W.3d 620, 621-22 (Mo. banc 2002); Lyon v. McLaughlin, 960 S.W.2d 522, 525 (Mo. Ct. App. 1998). Generally, an employee may not sue a co-employee or supervisor for the same injury for which they must seek compensation under the Worker's

Compensation Act. See State ex. rel. Badami v. Gaertner, 630 S.W.2d 175, 179-180 (Mo. Ct. App. 1982). Thus, the Seabaugh defendants' claims against Mr. Jannotti are barred by the same workers' compensation exclusivity provisions that bar their tort claims against Astro.

A co-employee or supervisor may only lose immunity from a civil suit if he affirmatively causes or increases his fellow employee's risk of injury. See McCoy v. Liberty Foundry Co., 635 S.W.2d 60, 63 (Mo. Ct. App. 1982). The "affirmative act" or "something more" alleged by a plaintiff must be outside the scope of the supervisor's regular duties and responsibilities, and must be more than an allegation that the supervisor failed to act in a manner so as to provide a safe workplace. See State ex rel. Feldman v. Lasky, 879 S.W.2d 783, 785 (Mo. Ct. App. 1994). Cf Hedglin v. Stahl Specialty Co., 903 S.W.2d 922, 927 (Mo. Ct. App. 1995) (holding supervisor arranged for co-employee to be dangled over a vat of scalding water, a task not within the employee's normal duties or required of other employees); Tauchert v. Boatmen's National Bank of St. Louis, 849 S.W.2d 573, 574 (Mo. banc 1993) (act of supervisor, who rigged a faulty hoist system in an elevator shaft which failed and caused plaintiff to fall, was outside the scope of employment).

Where, by contrast, the fellow employee or supervisor has merely acted within the ordinary scope of his employment, and is only alleged to have breached his general duty to provide a safe workplace, the activity does not rise to the level of an "affirmative act" or "something more" for purposes of bringing the supervisor outside the exclusivity provision of the Worker's Compensation Act. See Kelley v. DeKalb Energy Company, 865 S.W.2d 670, 672 (Mo. banc 1993); State ex rel. Larkin v. Oxenhandler, 159 S.W.3d 417, 422-23 (Mo. Ct. Ap. 2005); Collier v. Moore, 21 S.W.3d 858, 861 (Mo. Ct. App. 2000); State ex rel. Feldman, 879 S.W.2d at 785.

In the present case, the Seabaugh defendants allege nothing more than negligence in discharging the duty of the employer to provide a safe workplace. The Seabaugh defendants allege that Mr. Jannotti turned the yard dog abruptly without warning, signaling or looking; failed to keep a careful lookout; failed to pay proper attention; failed to avoid the collision; failed to properly control his vehicle; and drove a vehicle forward while looking backward or behind him through an area at a place and time where he knew pedestrians would be present. In Larkin, a case with similar facts, the Missouri Court of Appeals found that the decision by a driver to back his truck outside a construction zone without taking measures to avoid a collision with oncoming traffic resulting in the death of a co-employee, without more, did not rise to the level of "something more." 159 S.W.3d at 423. The Court noted that the accident, "while tragic, fails to a mount to more than a failure to discharge the duty to preserve a safe working environment." Id. Similarly, the allegations of the Seabaugh defendants with regard to Mr. Jannotti simply do not rise to the level of "something more" required by the Act to deprive Astro and Mr. Jannotti of immunity under the Missouri Workers' Compensation Act.

Plaintiff also claims that Judith Seabaugh's workers' compensation settlement agreement and release bars the claims of the Seabaugh defendants. The undersigned has determined that Astro and Mr. Jannotti are immune from the claims brought by the Seabaugh defendants. The court has further found that the workers' compensation exclusion in the policy at issue excludes coverage for the judgment in the underlying lawsuit. As such, it is not necessary to determine whether the workers' compensation settlement agreement and release provides yet another bar to the Seabaugh defendants' claims. Accordingly, it is the judgment of this court that the policy

issued by United Fire does not afford coverage for the incident at issue in the underlying lawsuit. Thus, plaintiff's Motion for Summary Judgment will be granted.

**C. Seabaugh Defendants' Counterclaim**

In view of the court's determination that there is no coverage for the Seabaugh defendants' claims under the United Fire policy, the Seabaugh defendants are not entitled to obtain payment of the state court judgment from United Fire. Thus, the Seabaugh defendants' counterclaim is denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's Motion for Summary Judgment (Doc. No. 31) be and it is **granted**. A separate Summary Judgment will be entered on this date.

**IT IS FURTHER ORDERED** that the counterclaim of Defendants Judith Seabaugh, Van Seabaugh, Victor Seabaugh and Vallerie Burke be and it is **denied**.

Dated this   16th   day of July, 2009.

_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE